THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **ORIENTAL FINANCIAL SERVICES CORP.,**<br><br>     Petitioner,<br><br>     v.<br><br>**MARIANO BETANCOURT-FIGUEROA,** *et al*<br><br>     Respondents. | Civil No. 20-1191 (ADC) |

**OPINION AND ORDER**

Respondents Mariano Betancourt-Figueroa and Cristina Quiles-Santos ("respondents") filed a motion to dismiss for lack of subject matter jurisdiction. **ECF No. 7**. Petitioner Oriental Financial Services, Inc. ("petitioner" or "Oriental") opposed the motion. **ECF No. 8**. For the following reasons, the motion to dismiss is **GRANTED**.

**I.     Background**

On April 23, 2020, Oriental filed a petition pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10, to vacate the arbitration award of $37,000 entered on March 24, 2020 in an arbitration proceeding administered by the Financial Industry Regulatory Authority ("FINRA"), captioned *Mariano Betancourt-Figueroa and Cristina Quiles-Santos v. Oriental Financial Services Corp.*, FINRA Case No. 19-01124. *See* **ECF No 1**. On April 28, 2020, respondents filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1) arguing that this Court lacks subject matter

jurisdiction to vacate the award. **ECF No. 7**. In opposition, petitioner contends that federal question jurisdiction exists since respondents' petition before FINRA set forth claims for violations of federal securities law. **ECF No. 8**.

## II.     Standard of Review

Under Rule 12(b)(1), a defendant may move to dismiss a complaint for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When reviewing a complaint under Rule 12(b)(1), courts "construe the Complaint liberally and treat all well-pleaded facts as true, according the plaintiff[s] the benefit of all reasonable inferences." *Town of Barnstable v. O'Connor*, 786 F.3d 130, 138 (1st Cir. 2015) (alteration in original) (citation and internal quotation marks omitted). A complaint, so construed, must be dismissed under Rule 12(b)(1) if the Court lacks subject-matter jurisdiction to adjudicate its claims.

Since federal courts are courts of limited jurisdiction, jurisdictional matters must be promptly addressed. *Torres-Vázquez v. Commercial Union Ins. Co.*, 417 F. Supp. 2d 227, 233 (D.P.R. 2006) (citing *Spielman v. Genzyme Corp.*, 251 F3d 1 (1st Cir. 2001)). Accordingly, this Court must determine whether it has jurisdiction to vacate the arbitration award at issue.

## III.    Analysis

The FAA applies to arbitration agreements "in any maritime transaction or a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. It "provides several mechanisms for enforcing arbitration agreements and awards." *Ortíz-Espinosa v. BBVA Sec. of P.R., Inc.*, 852 F.3d 36, 42 (1st Cir. 2017). On one hand, sections 3 and 4 of the FAA provide that a court may,

upon application, stay litigation pending arbitration and compel arbitration pursuant to an arbitration agreement. 9 U.S.C. §§ 3, 4. Moreover, "[o]nce an arbitration award has issued, FAA sections 9 through 11 supply means for acquiring 'a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it.'" *Id.* (citing *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008)). Of particular relevance, section 10 provides the grounds for expedited vacatur of an arbitration award. *Id*. (citing *Hall St.*, 552 U.S. at 584).

The importance of post-award federal review afforded through sections 9, 10, and 11 of the FAA was echoed by the First Circuit Court of Appeals, in holding that

> [t]hose provisions show that Congress contemplated that the federal courts would have a central role and broad authority to enforce arbitration agreements (including confirming, vacating, or modifying an arbitration award). Sections 9, 10, and 11 provide that proceedings may be brought in 'the United States court in and for the district wherein the award was made.' 9 U.S.C. § 10(a); accord §§ 9, 11. *Ortíz-Espinosa*, 852 F.3d at 43.

The FAA, however, "bestow[s] no federal jurisdiction but rather require[es] [for access to a federal forum] an independent jurisdictional basis" over the dispute between the parties. *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009) (citations and quotations omitted); *see also Ortíz-Espinosa*, 852 F.3d at 43 (noting that while the FAA "provisions do not themselves confer jurisdiction, they evidently contemplate that award enforcement will occur in federal courts as a matter of course. In fact, there is no explicit provision for post-award enforcement in state courts.") Consequently, "to open the federal court's door, a party must demonstrate an independent basis for jurisdiction over the arbitration-related dispute." *UBS Fin. Servs. v.*

*Asociación De Empleados del Estado Libre Asociado*, 223 F. Supp. 3d 134, 137 (D.P.R. 2016) (citing *Hall*, 552 U.S. at 581).

In ascertaining whether jurisdiction exists to compel arbitration, the Supreme Court held that a federal court may "look through' a § 4 petition[1] to determine whether it is predicated on an action that 'arises under' federal law." *Vaden*, 556 U.S. at 62. Under *Vaden*, "[t]he proper jurisdictional inquiry for a motion to compel arbitration is whether, 'save for [the arbitration] agreement,' the court would have jurisdiction 'over 'a suit arising out of the controversy between the parties.'" *Id.* at 70 (alteration in original). The Court reasoned that if a federal court were permitted "to entertain a § 4 petition only when a federal-question suit is already before the court, when the parties satisfy the requirements for diversity-of-citizenship jurisdiction, or when the dispute over arbitrability involves a maritime contract," such an "approach would not accommodate a § 4 petitioner who could file a federal-question suit in (or remove such a suit to) federal court, but who has not done so." *Ortíz-Espinosa*, 852 F.3d at 44 (citing *Vaden,* 556 U.S. at 65). By contrast, the look-through approach avoids this situation because it allows a party to request an order compelling arbitration without first "seeking federal adjudication of the very questions it wants to arbitrate rather than litigate." *Id.*

---

[1] "Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, authorizes a United States district court to entertain a petition to compel arbitration if the court would have jurisdiction, 'save for [the arbitration] agreement,' over 'a suit arising out of the controversy between the parties.'" *Vaden*, 556 U.S. at 52.

After *Vaden*, there was a split among the circuits as to the applicability of the look-through approach to post award review by federal courts. *Ortíz-Espinosa*, 852 F.3d at 44-45.[2] In *Ortíz-Espinosa*, the First Circuit Court of Appeals held that the look-through approach cannot be limited to section 4 petitions to compel arbitration and extended its applicability to the FAA's award enforcement provisions, namely, sections 9, 10 and 11 of the FAA. The appeals court reasoned that considering "the important role intended for the federal courts in enforcing arbitration agreements post-award, it would make no sense to effectively exclude federal question jurisdiction over those cases. And, the look-through approach is the only possible approach that would provide such federal jurisdiction." *Id.*[3] After applying the look-through approach, the Court of Appeals found that the claims raised in the arbitration at hand involved federal securities laws and thus the district court properly exercised jurisdiction over claimant's petition to vacate the arbitration award.[4]

---

[2] While the Second Circuit has held that the look-through approach applies at least to §10 petitions to vacate, *Doscher v. Sea Port Grp. Sec,. LLC*, 832 F.3d 372, 388, (2nd Cir. 2016), the Seventh and Third Circuits have held that "a federal issue resolved by the arbitrator does not supply subject-matter jurisdiction for review or enforcement of the award." *Magruder v. Fid. Brokerage Servs. LLC*, 818 F.3d 285, 288 (7th Cir. 2016); *see also Goldman v. Citigroup Glob. Mkts. Inc.*, 834 F.3d 242, 255 (3rd Cir. 2016) (look-through does not apply to §10 motions to vacate).

[3] The appellate court further reasoned that "[a]pplying the look-through approach to post-award decisions avoids a 'bizarre' distinction that would otherwise follow: 'a petition to compel arbitration could be brought in federal court, but a petition under FAA §§ 9 or 10 to confirm or vacate the arbitration award in the same dispute could not.'" *Ortiz-Espinosa*, 852 F.3d at 46. Moreover, it noted that, "[r]emitting the litigants to state court for post-award enforcement proceedings would create potential inconsistency between the federal pre-award decision and the later state court decision involving the question of whether the arbitrators exceeded their powers by deciding issues that are not properly subject to arbitration." *Id.* at 47.

[4] The Court noted that "Claimants asserted several claims under both federal and Puerto Rico law, alleging, inter alia, violations of Section 10 (b) of the Securities Exchange Act, Rule 10b-5 of the Securities Exchange Commission, and also the securities laws of Puerto Rico. The statement of claim asserted claims under state tort and contract law as well. With respect to the retirement plan accounts, claimants also alleged that the investments and margin loans were violations of the Employee Retirement Income Security Act." *Ortiz-Espinosa*, 852 F.3d at 40.

A review of the filings reveals that the parties do not dispute the applicability of the "look-through" doctrine to determine whether a district court has subject matter jurisdiction over a motion to vacate an arbitration award under section 10 of the FAA. Consequently, following *Ortíz-Espinosa*'s holding, this Court must "look through" to respondents' statement of claim filed in the FINRA proceedings in order to ascertain whether there is federal jurisdiction over Oriental's request to vacate the arbitration award.

At the outset, the Court must acknowledge that respondents' motion to dismiss misses the mark when focusing on allegations that diversity jurisdiction is lacking here. Pointedly, petitioner has never alleged diversity jurisdiction. As a threshold matter, nonetheless, this Court must assess whether there is federal subject-matter jurisdiction on any grounds. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). In its motion to vacate the arbitration award, Oriental asserts that federal jurisdiction exists because respondents' "arbitral claims included a claim for violations of a series of alleged duties defined by federal case law." **ECF No. 1** at 5. Oriental further argues that respondents' causes of action before FINRA "arise under federal law" because they "raise disputed and substantial issues of federal law." **ECF No. 8** at 8; *see also* **ECF No. 1**. Specifically, Oriental contends that federal question jurisdiction attaches insofar as respondents' statement of claims before FINRA included alleged violations of federal statutes, such as the Investment Company Act of 1940. Lastly, Oriental proffers that this Court has supplemental jurisdiction as to the Puerto Rico law claims included in the underlying arbitration. *See Ortíz-Espinosa*, 852 F.3d at 47 (noting that "[a]lthough the statement of claim also

includes claims arising under state law, there is no suggestion that those claims do not constitute part of the same controversy as the federal securities law claims.")

Interestingly, Oriental cites *Gunn v. Minton*, 568 U.S. 251 (2013), to show that even if premised on state law, respondents' causes of action before FINRA arise "under federal law" conferring jurisdiction to this Court to review its request for vacatur. The opposite result, however, is warranted here under *Gunn*. Oriental's request for vacatur relies on federal question jurisdiction, under 28 U.S.C. § 1331, as an independent jurisdictional basis for this Court to hear the case. **ECF No. 1** at 4; *see Ubs Fin. Servs.*, 223 F. Supp. 3d at 137. Under 28 U.S.C. § 1331, federal district courts have jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Nevertheless, "a suit 'arises under' federal law 'only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law].'" *Ubs Fin. Servs.*, 223 F. Supp. 3d at 138 (citing *Vaden*, 556 U.S. at 60 (internal quotations omitted)). That is not the case here since respondents' FINRA claims are premised on Puerto Rico law and revolve around Oriental's alleged breach of contract and its fiduciary duties.

The Supreme Court has drawn narrow exceptions "to the general rule that courts look only to the complaint to determine if the action 'arises under' federal law." *Ubs Fin. Servs.*, 223 F. Supp. 3d at 138. Such is the case "when a party pleads a state law claim implicating important federal issues," and as a result "the claim nevertheless arises under federal law." *Id*. (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005)). In *Gunn*, the Supreme Court held that federal jurisdiction will lie over a state law cause of action only if the

face of the complaint reveals a "federal issue [that] is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in a federal court without disrupting the federal-state balance of power." *Gunn*, 568 U.S. at 258.

Unlike the respondent in *Ubs Fin. Servs.*, who alleged violations of federal securities laws, including causes of action under Section 10(b) of the Exchange Act, Rule 10b-5, and the Investment Advisers Act of 1940, respondents here did not set forth allegations seeking relief under any federal statute. *Ubs Fin. Servs.*, 223 F. Supp. 3d at 140. Conversely, respondents' claims are premised on the Puerto Rico Uniform Securities Act (PRUSA) and other state laws. **ECF No. 1-3**. Oriental conceded as much in arguing that respondents' claims were time barred under PRUSA. **ECF Nos. 1-4, 1-5**. As such, a review of respondents' statement of claim shows that a federal issue was not raised or actually disputed before FINRA.

Furthermore, the FINRA claims do not raise a substantial federal issue as defined by the Supreme Court in *Gunn*. In *Gunn*, the Court explained that for a case to be "substantial in the relevant sense," it is not enough that the federal issue be significant to the particular parties in the immediate suit. Instead, the substantiality factor focuses on "the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. Such is the case when the outcome of the claim could turn on a new interpretation of a federal statute or regulation which will govern a large number of cases. *See Mun. of Mayagüez v. Corporación Para el Desarrollo del Oeste, Inc.*, 726 F.3d 8, 14 (1st Cir. 2013). Moreover, the Supreme Court has "repeatedly suggested that a federal issue is more likely to be substantial where a claim between two private parties, though based

in state law, directly challenges the propriety of an action taken by 'a federal department, agency, or service." *Id.* (citations omitted).

Applying *Gunn*, the First Circuit concluded that federal jurisdiction was lacking where the ultimate question in a contract claim hinged on whether defendant failed to comply with federal regulations, and thereby breached its contract. *Mun. of Mayagüez*, 726 F.3d 8, 14. The appeals court noted that such "dispute is the sort of 'fact-bound and situation-specific' claim whose resolution is unlikely to have any impact on the development of federal law." *Id.* The court further held that the resolution of the case would not impact how any federal agency, department or service conducts it services, or the federal system as a whole. *Id*.

A similar reasoning applies here where Oriental's vacatur centers on questioning the arbitrators' actions, there is no federal department or agency involved in the dispute, and the resolution of the breach of contract claims will not result in a new interpretation of federal regulations that could impact a large number of future cases. *Cf. Wendella Sightseeing Co. v. Blount Boats, Inc.*, 2018 U.S. Dist. LEXIS 53622, *8 (D.R.I. March 30, 2018). Consequently, this Court finds "that the federal issue in this case is not substantial in the relevant sense to warrant federal jurisdiction." *Municipality of Mayagüez*, 726 F.3d at 17. Absent diversity or any other independent grounds conferring jurisdiction in this case, dismissal is warranted for lack of jurisdiction.

## IV.   Conclusion

Based on the above, respondents' motion to dismiss is **GRANTED**. **ECF No. 7**. Consequently, the case is **DISMISSED WITH PREJUDICE**. The Clerk of Court is to enter judgment accordingly.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 31st day of March 2021.

                                                **S/AIDA M. DELGADO-COLÓN**
                                                **United States District Judge**